AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Timothy Jay NORMAN | ) Case No. |
| | )      1:21MJ 236 |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 12, 2021 _____ in the county of _____ Guilford _____ in the
_____ Middle _____ District of _____ North Carolina _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(d)(1) | Unlawful transfer of firearm to a prohibited person |

This criminal complaint is based on these facts:

See attached Affidavit of FBI Special Agent Phillip W. Spainhour

☑ Continued on the attached sheet.

                                                    /s/ Phillip W. Spainhour
                                                     *Complainant's signature*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

                                          Phillip W. Spainhour, Special Agent, FBI
                                                    *Printed name and title*

Date: 07/01/21

                                                     *Judge's signature*

City and state:     Greensboro, North Carolina
                                          L. Patrick Auld, U.S. Magistrate Judge
                                                    *Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Phillip W. Spainhour, Special Agent of the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI). I am an "investigative or law enforcement officer of the United States," within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 922(g)(1), Title 18, United States Code – Felon in Possession of Firearm; and Section 922(d), Title 18, United States Code – Unauthorized Transfer of Firearm to Prohibited Persons.

2.      I have been a Special Agent (SA) of the FBI for more than thirteen years. I am currently assigned to the Charlotte Division at the Greensboro Resident Agency, and focus on investigations involving Public Corruption, Civil Rights and White Collar Crime. Prior to the FBI, I served over ten years as a Detective and Deputy Sheriff with the Forsyth County Sheriff's Office, in Winston-Salem, North Carolina. I have completed hundreds of hours of training in numerous areas of law enforcement investigations and techniques, including but not limited to the following: Basic Law Enforcement Training through the State of North Carolina; Specialized training through the North Carolina Justice Academy; FBI New Agents Training in Quantico, Virginia; and Specialized Federal Law Enforcement training involving White Collar Crime, Public Corruption, Civil Rights, Health Care Fraud, Evidence Response Team (ERT), Organized Crime Drug Enforcement Task Force (OCDETF), Money Laundering, Asset Forfeiture, Counterintelligence, and Domestic and International Terrorism. I have participated in and conducted investigations of illegal activity involving violent crime, drug and firearms trafficking, gang activity, fraud, money laundering, public corruption, civil rights, white collar crime, domestic and international terrorism,

and other violations against the United States. Those investigations have led to the indictments, arrests, and convictions of numerous individuals for various State and Federal criminal violations.

3. This Affidavit is provided for the limited purpose of establishing probable cause in support of a criminal complaint against Timothy Jay NORMAN, charging that, on or about May 12, 2021 in the County of Guilford, NORMAN committed the following federal offense: sale or disposal of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(d)(1).

## DETAILS OF THE INVESTIGATION

4. On April 15, 2021, the FBI Charlotte Division, Greensboro Resident Agency received information from the Raleigh Police Department (RPD) concerning North Carolina Highway Patrol (NCHP), State Trooper Timothy Jay NORMAN (Norman), who is a subject of the investigation. In January of 2021, RPD Narcotics Detectives learned through a Confidential Human Source (CHS) who was cooperating as part of a drug trafficking investigation, that Norman had sold firearms to Tommy Lee Hudson (Hudson), who is a subject of the investigation. RPD confirmed Norman and Hudson's identities and that Norman was currently employed as a NCHP State Trooper. They also confirmed Hudson was a convicted felon, prohibited from possessing firearms and ammunition.[1]

---

[1] Hudson was convicted on September 27, 2016 in the Superior Court of Rockingham County, North Carolina, of felony assault with a deadly weapon inflicting serious injury and sentenced to a term of imprisonment exceeding one year. He also confirmed to CHS, as set forth in further detail *infra*, knowledge of his felony status.

2

5.        Hudson offered to introduce the CHS to Norman, whom Hudson described as his source of supply for the purchase of firearms and ammunition. Hudson described multiple firearms purchased from Norman and additional firearms Norman had for sale. Hudson positioned himself to work as broker or middleman between the CHS and Norman for the purchase of firearms. The firearms offered for sale included decommissioned NCHP service weapons described as Sig Sauer P226 357 semi-automatic pistols, Arma Lite, AR-15, 5.56mm, semi-automatic rifles and P. Beretta, Model 1201FP-12 gauge shotguns. The Sig Sauer P226 semi-automatic pistols had the NCHP badge engraved on the top, rear portion of the slide and the Arma Lite rifles have the badge engraved on the side of the magazine well.

6.        On January 25, 2021, the Bureau of Alcohol Tobacco Firearms and Explosives (BATFE) – Raleigh Resident Agency conducted an e-trace report on Norman, which resulted in returns for multiple firearms purchases. One of the e-trace reports with a purchase date of April 1, 2020, showed Norman had purchased four (4) Sig Sauer P226 357 semi-automatic pistols with serial numbers 47E051584, 47E051582, 47E053793 and 47E051830 from Lawmen's Distribution LLC, 3319 Anvil Place, Raleigh, NC, 27603 (Lawmen's).

7.        RPD provided the FBI with copies of text message communications between the CHS and Hudson, who was at that time described in the CHS's phone as "Tommy Gun."

8.        In a January 27, 2021 text message from Hudson to the CHS, Hudson described firearms he wanted to sell for Norman as: "government edition 357 pistols they have a badge or emblem where the sights are."

9.        In a February 1, 2021 text message conversation between Hudson and the CHS about the price of the 357, Hudson replied: "Last I heard 1200 new they high af but shooting that

3

compared to a Glock you'll see why it's that price & trust me I'm a Glock man all day but that sig changed me overnight New they 1800-2000 fr."

10.       On February 24, 2021, the CHS sent RPD Narcotics Detectives two text message photos they received from Hudson. The photos are described as two semi-automatic rifles and a semi-automatic pistol with magazines, extended magazines, loose ammunition and a set of handcuffs. (See Exhibit A – Text Message Photos #1 & #2).

11.       On March 24, 2021, Hudson sent three text message photos from telephone number (336) 520-5946, to the CHS of additional firearms he and/or Norman had for sale. The CHS provided the photos to RPD Narcotics Detectives. The first photo is described as three shotguns and three semi-automatic rifles standing on end, barrels up, leaned against the rear tire of a dark in color truck with black wheels. The three rifles appeared to have the NCHP badge engraved on the right side of the magazine well. (See Exhibit A – Text message Photo #3).

12.       On April 21, 2021, FBI SA Loren Sherman conducted open source database checks for publicly available social media accounts associated with Norman. SA Sherman located a Facebook account in the name of "Timothy Jay Norman" that contained information and photos that were open to the public for viewing. The photos included one of what appeared to be a 2004 Ford F-150 truck registered to Norman. The style, color and black wheels on the truck appeared to be identical to the one shown in the photo of the three shotguns and three semi-automatic rifles the CHS received as a text message from Hudson on March 24, 2021. (See Exhibit A – FB Screen Shot Photos #1 & #2).

13.       The second and third text message photos the CHS received from Hudson on March 24, 2021, are described as what appears to be a Sig Sauer P226 357 semi-automatic pistol in a case with two magazines and a picture of the same pistol out of its case with a close up of the

4

NCHP badge located on top of the slide near the rear sight. In the close up picture another closed gun case can be seen on the right side of the frame. There is blue tape on the outside of the closed gun case and the name "A.G. Knight" is handwritten in black marker on the tape. A Google search result identified A.G. Knight as a NCHP State Trooper and K-9 handler as of 2020. (See Exhibit A – Text Message Photos #4 & #5).

14.     In a March 25, 2021 text message from Hudson to the CHS from telephone number (336) 520-5946, Hudson provided his address as 126 Pin Oak Drive, Reidsville, NC, 27320 (Residence #1). On that same date, the CHS met with Hudson at that location and observed him in possession of numerous firearms. The CHS described the residence as a trailer/mobile home but was not sure if Hudson actually lived at that location. The address was believed to be Hudson's mother's residence. The CHS also observed both Hudson's mother and his girlfriend in possession of firearms at Residence #1. Hudson demonstrated several firearms for the CHS by shooting them in the backyard area behind Residence #1.

15.     Following the firearms demonstration, Hudson and the CHS sat outside the Residence #1 in a vehicle. The CHS consensually recorded their conversation with Hudson. During the recorded conversation, Hudson described multiple firearms for sale through his source of supply, Norman. Hudson said he had purchased a Beretta shotgun from Norman for $700.00. Hudson described the shotgun in detail and how it functioned as compared to other types of shotguns. Hudson and the CHS discussed the Sig Sauer P226 357 semi-automatic pistol that was offered for sale by Norman. Hudson said only 2000 of those pistols were made, but there were only 1800 State Troopers in North Carolina, so they had extras available. The NCHP had switched from the Sig Sauer P226 to the new Sig Sauer P320 pistol as their issued duty weapon. Hudson

5

implied there was now a surplus of the decommissioned NCHP Sig Sauer P226 pistols available for sale and made accessible to them only because of Hudson's relationship with Norman.

16.      Hudson called Norman in the CHS's presence and put the call on speaker so the CHS could hear their conversation regarding firearms that were for sale and prices. During the recorded conversation, Hudson asked Norman for a price for another Beretta shotgun, then Hudson told Norman he wanted to purchase four (4) more shotguns. Hudson asked Norman how much it would cost to purchase one of the used NCHP Sig Sauer P226 pistols and Norman stated "14," indicating a cost of $1,400.00. Hudson asked Norman about the cost of the "AR's" and Norman responded: "they cost me like, about 12 ... I just want to make something on it, if I buy them and put them in my name." The "12" statement indicated a cost of $1,200.00. Hudson also asked Norman to help him with a recent traffic ticket he received for speeding 68mph in a 50mph zone. Norman responded: "I probably can." The CHS provided the FBI with a copy of the recording.

17.      On April 16, 2021, the CHS advised Hudson said he and Norman were from the same area of North Carolina and had known each other for years. Hudson told the CHS that he and Norman had partied and used drugs like marihuana and cocaine together before Norman became a State Trooper.

18.      On April 21, 2021, the FBI met with the CHS. Hudson told the CHS during several previous occasions when Hudson purchased firearms from Norman, that Norman had been in uniform and driving his NCHP patrol car.

19.      In approximately January of 2021, when the CHS initial met Hudson, he (Hudson) was wearing a tracking monitor on his ankle due to being on probation. The CHS believed it was unlikely Norman would not have known about Hudson's status as a convicted felon

6

since he had to wear the ankle monitor and would likely have been restricted in his ability to travel very far when they met for the purpose of Hudson purchasing firearms from Norman.

20.     On May 3, 2021, the CHS met with Hudson and consensually recorded their conversation. During the recorded conversation, Hudson said Norman asked Hudson to work for him the previous week clearing twelve acres of land, with the help of three other State Troopers. Hudson told the CHS he didn't want to be around the other Troopers because he did not know them like he knew Norman. Hudson said when he and Norman were around other people, Norman made statements about him like "that dude right there is crazy, *he's been to prison*, he'll kill a motherfucker." (emphasis added). This statement by Hudson is further indication Norman and Hudson were both aware of Hudson's criminal history and his status as a convicted felon. The CHS provided the FBI with a copy of the recording.

21.     On May 5, 2021, the CHS advised Hudson told them that Hudson's girlfriend broke his cell phone during the previous weekend (May 1, 2021 – May 2, 2021).

22.     On May 6, 2021, the CHS purchased Hudson a new prepaid cell phone at Walmart and provided it to Hudson on or about the same day.

23.     On May 10, 2021, Hudson advised the CHS he had activated the cell phone and provided the new number as (336) 613-7258.

24.     On May 11, 2021, Assistant Special Agent in Charge (ASAC) William D. Marsh of the North Carolina State Bureau of Investigation Special Investigations Unit (NC-SBI, SIU), obtained a North Carolina State Court Order authorizing the installation and monitoring of a Pen Register/Trap and Trace (PRTT) for cellular telephone number (336) 613-7258, used by Hudson. The order was signed by Superior Court Judge S.L. Allen.

7

25.     On May 12, 2021, the CHS provided the FBI with a copy of a recorded conversation between the CHS and Hudson that had occurred on or about May 11, 2021, at approximately 4:56pm (EST). During the recorded conversation, Hudson told the CHS he could sell a shotgun to the CHS for $800.00 and that Hudson owned the same shotgun himself. Hudson told the CHS he had bought many firearms from Norman and had done so while Norman was on duty in his patrol car. Hudson talked about meeting Norman in the past while he was in uniform and buying the guns from him in a parking lot of a retail store. Hudson explained when he bought firearms from Norman, the firearms were stored in the trunk of Norman's NCHP patrol vehicle.

26.     Hudson told the CHS he and Norman had known each other for a long time and abused cocaine with each other approximately ten (10) years ago. Hudson explained Norman knows Hudson is a convicted felon. Hudson stated: "I don't know no other cop ... fucking police ... *that will sell a felon a gun*." (emphasis added).

### The May 12, 2021 Controlled Buy

27.     On May 12, 2021, the FBI conducted a successful controlled firearms evidence purchase from Hudson and Norman utilizing the CHS. The purchase was consensually audio/video recorded by the CHS and physically surveilled by FBI and (NC-SBI) ground Agents and an FBI Aircraft. The FBI Aircraft video recorded the air surveillance activities.

28.     The CHS met with Hudson at his girlfriend's residence, 7372 NC-87, Reidsville, NC 27320 (Residence #2). While inside Residence #2, Hudson took the CHS to a bedroom and showed the CHS numerous firearms, magazines and ammunition. Hudson said he could only buy ammunition that was 115 grains in the store but was able to get access to law enforcement rounds from Norman that were 147 grains, making the bullets much heavier and more powerful. Hudson purchased several boxes of ammunition from Norman for $60.00 per box. Hudson said

8

approximately two months earlier, Norman had offered to sell Hudson one of the used NCHP Sig Sauer P226 pistols for $800.00, because at that time Norman had ten (10) of them in his trunk. Hudson said Norman had "bought in bulk."

29.      While still in the bedroom of Residence #2, the CHS observed Hudson snort a line what was believed to be methamphetamine. The CHS observed Hudson carrying a Glock 9mm semi-automatic pistol in the front pocket of his hooded sweatshirt. (See Exhibit A – Video Screen Shot #1).

30.      Hudson later called Norman and put the call on speaker so the CHS could hear their conversation. Hudson and Norman discussed the purchase of a NCHP Sig Sauer P226 semi-automatic pistol for $1,600.00. Hudson and Norman discussed additional firearms and ammunition Norman was willing to sell to Hudson and the CHS. Norman offered to sell them 357 ammunition for $70.00 (per box) and 9mm ammunition for $50.00 (per box). Hudson replied, "hollow point?" and Norman said, "Ranger, that's the good shit." Norman said he sold some ammunition the other day to someone for $80.00 a box. Hudson asked Norman if he still had the "AK" because Hudson wanted to purchase a rifle. Norman said he still had the "AK" and confirmed it was the same one Hudson had previously shot. Norman indicated he was willing to meet Hudson and the CHS in person during this purchase and/or future firearms purchases. Norman sent Hudson photos via text message of additional firearms he had for sale. Hudson forwarded the photos to the CHS, who then provided them to the FBI. (See Exhibit A – Text Message Photos #6, #7 & #8).

31.      The CHS provided Hudson with $1,600.00 in U.S. currency (FBI case funds). Hudson and his girlfriend traveled to Norman's residence, 7718 Oak Valley Court, Browns Summit, NC 27214 (Residence #3). Hudson met with Norman and purchased a **Sig Sauer P226**

9

357 semi-automatic pistol, bearing serial number 47A061969, with the NCHP badge engraved on top of the slide, in a case with two magazines for $1,600.00.

32.     Hudson and his girlfriend traveled from Norman's residence to Wendy's at 533 Freeway Dr., Reidsville, NC and delivered the pistol to the CHS. Hudson described his interaction with Norman to the CHS. Hudson said Norman tried to increase the price of the pistol from $1,600.00 to $2,000.00, but Hudson refused. Hudson opined that Norman was getting other people he sold to with that tactic and making a few extra hundred dollars off of those sales. During the operation, NC-SBI, SIU, ASAC Marsh monitored the PRTT for telephone number (336) 613-7258 used by Hudson. ASAC Marsh advised telephone number (336) 613-7258 had communicated by both voice calls and text messaging with telephone number (336) 404-6565 used by Norman. The FBI seized the pistol from the CHS for evidence. (See Exhibit A – Evidence Photos #1, #2 & #3).

33.     On May 19, 2021, BATFE - Greensboro Resident Agency, SA Michael Newsome provided the FBI with current multiple sale query e-trace reports for Norman, covering the dates of October 17, 2019 through April 13, 2021. These reports account for only multiple sales purchased during the aforementioned time period and not for any individual sale purchases which may have also occurred. Based on a review of the reports, Norman purchased twenty-three firearms (23) within a six-month period, eighteen (18) of which were Sig Sauer P226 357 semi-automatic pistols.

34.     One of the e-trace reports with a purchase date of January 14, 2021 showed Norman had purchased five (5) Sig Sauer P226 357 semi-automatic pistols from Lawmen's. One of those Sig Sauer P226 357 semi-automatic pistols contained serial number 47A061969. This serial number matched the NCHP Sig Sauer P226 357 semi-automatic pistol that the CHS purchased from Norman through Hudson on May 12, 2021.

10

35.     On May 25, 2021, the CHS contacted the FBI and reported a Beretta shotgun and Arma Lite AR-15 semi-automatic rifle were available for purchase from Norman through Hudson. The price of the shotgun was $1,000.00 and the price of the rifle was unknown. Hudson advised he would take the CHS to meet Norman during the next firearms purchase.

36.     On June 3, 2021, the CHS met with FBI Agents and provided a copy of a recorded conversation between the CHS and Hudson. During the recorded conversation, the CHS and Hudson discussed prices for an upcoming controlled firearms purchase. Hudson called Norman to confirm the prices of various firearms. The phone call was placed on speaker phone and the conversation was plainly heard. Norman told Hudson the price of a shotgun was $800.00 and the price for a semi-automatic rifle was $1,600.00. Hudson told Norman he wanted to purchase the firearms in order to give to his dad. In actuality, Hudson was inquiring about the purchase of the firearms for the CHS, but for some unknown reason said he was inquiring for his dad. I believe Hudson's statement may have been an attempt to get Norman to lower the asking prices for the firearms. After the call ended, Hudson warned the CHS that Norman had been raising the prices for the firearms he was selling. The CHS advised they were scheduled to meet with Hudson again on June 4, 2021.

37.     On June 4, 2021, the CHS advised they were told by Hudson that Hudson's girlfriend had broken his cell phone again and Hudson was temporarily using his father's cell phone.

38.     On June 6, 2021, the CHS provided FBI Agents with Hudson's new cell phone number (336) 552-0526.

39.     On June 7, 2021, the CHS met with Hudson at Kickback Jacks Restaurant, 1600 Battleground Avenue, Greensboro, NC 27408. This meeting was physically surveilled by SAs

11

Spainhour and Sherman. The CHS scheduled a controlled firearms evidence purchase with Hudson and Norman for an NCHP shotgun, AR-15 rifle with magazines and possibly a drum magazine on June 8, 2021.

40.    Following the meeting with Hudson, the CHS met with FBI agents for debriefing. During the debriefing, Hudson called the CHS. The CHS put the call on speaker for FBI Agents to hear. SA Spainhour used a digital recorder to consensually record the conversation between the CHS and Hudson. Hudson and the CHS discussed firearms the CHS planned to purchase from Norman and an estimated total cost of approximately $3,000.00.

## The June 8, 2021 Controlled Buy

41.    On June 8, 2021, the FBI conducted a successful controlled firearms evidence purchase from Hudson and Norman utilizing the CHS. The purchase was consensually audio/video recorded by the CHS and physically surveilled by FBI and NC-SBI ground Agents and NC-SBI Aircraft. The NC-SBI Aircraft video recorded the air surveillance activities.

42.    The CHS traveled to Residence #1, where Hudson was living and maintained a bedroom. Once at Residence #1, Hudson met the CHS in the driveway and invited them inside. Hudson said he wanted to "show them something." Hudson took the CHS to his bedroom where he showed the CHS a Glock semi-automatic handgun, AR-15 semi-automatic rifle, magazines and ammunition. The CHS described the items as being displayed across Hudson's bed. (See Exhibit A - Video Screen Shot #2).

43.    Hudson told the CHS he went through "BLET" (Basic Law Enforcement Training) in 2010 and graduated with Norman. Hudson showed the CHS a photo of their BLET class and pointed out Norman and himself in the photo. Hudson was not immediately able to get hired by a law enforcement agency, so he initially worked for a private security company. Hudson

12

said he "got a felony and couldn't carry a gun no more." Hudson said Norman "begged me to go to Trooper school with him and leave that company." Hudson said he and Norman had worked together for the same private security company. Hudson said he and Norman had done cocaine together in the past. Hudson said, "*He knows I'm a felon, I've called him from prison.*" (emphasis added).

44.    The CHS and Hudson traveled to Residence #3. Hudson told the CHS if Norman knew the CHS was a convicted felon he probably wouldn't sell guns to him, but that Norman would and had previously sold guns to Hudson despite knowing Hudson was a convicted felon. Hudson said Norman kept an unknown amount of U.S. currency in his patrol car that Hudson described as "nothing but hundreds."

45.    After Hudson became a convicted felon, Norman told Hudson his (Norman's) father would hire Hudson to work in construction. Hudson worked for Norman's father a short period of time.

46.    The CHS and Hudson arrived at Norman's residence (Residence #3). First, they pulled into the driveway and parked in front of Norman's Ford F-150 truck and trailer. Before meeting Norman, Hudson told the CHS that Norman's full name was "Timothy Jay Norman." Norman arrived soon after them and backed up the driveway, parking his NCHP patrol vehicle between the F-150 truck and his Dodge Charger Hellcat (See Exhibit A – Aerial Video Screen Shots #1 & #2 and Video Screen Shot #3).

47.    Norman exited the patrol vehicle in uniform and met Hudson and the CHS who were standing in the driveway. Hudson introduced the CHS to Norman. Norman drew his service pistol from his duty belt holster and showed Hudson and the CHS NCHP's current issued Sig Sauer P320 service pistol with engraved badge. (See Exhibit A – Aerial Video Screen Shot #3).

13

48.     Hudson and the CHS followed Norman inside the garage of Residence #3. Hudson and the CHS remained in the garage area while Norman went inside and changed out of his uniform and into shorts and a t-shirt. Norman was storing a 30-30 rifle at Residence #3 that belonged to Hudson. Norman loaned Hudson $350 and the 30-30 rifle was being held by Norman as collateral for repayment. Norman retuned to the garage carrying the decommissioned NCHP Beretta 12 gauge shotgun, Arma Lite AR-15 semi-automatic rifle and drum magazine the CHS had agreed to purchase.

49.     Hudson and the CHS stayed in the garage area the entire time they were at Residence #3. Hudson was supposed to be purchasing a 60 round drum magazine and some ammunition from Norman for Hudson's 9mm Glock pistol. Norman showed Hudson and the CHS a brand new, decommissioned NCHP Sig Sauer P226 357 semi-automatic pistol that was for sale and still inside plastic. The CHS observed lots of full boxes of ammunition in the garage area, some of which were stored in a large bag on the floor (See Exhibit A - Video Screen Shot #3).

50.     Norman, Hudson and the CHS discussed and handled numerous types of firearms, ammunition and accessories while at Residence #3. Norman showed the CHS a small silver device/accessory for the AR-15 rifle, which the CHS understood made the rifle fire more rapidly like a fully automatic version. Norman offered to sell the CHS the device for $250.00, but the CHS declined. Norman had several of these devices for sale.

51.     The CHS purchased the Beretta shotgun, Arma Lite AR-15 with one magazine, soft black case and a drum magazine from Norman for $3,200.00 (FBI case funds). Norman said one of the guns he sold to the CHS was not his but was "John's gun." There was some discussion between the CHS and Norman about purchasing at a future date, the new, decommissioned NCHP Sig Sauer P226 357 semi-automatic pistol that had been shown to the CHS. Hudson and the CHS

14

said their goodbyes to Norman and left his residence. (See Attached A - Video Screen Shots #4 & #5).

52.     The CHS drove Hudson back to Residence #1. During the drive, Hudson told the CHS that Norman had run license plates and gun serial numbers for him in the past. The CHS asked if Hudson could get Norman to run some tags for them and Hudson said he believed Norman would. The CHS told Hudson they were a bit anxious about having purchased guns from a State Trooper, because they are a convicted felon. Hudson acknowledged Norman was taking a huge risk in selling firearms to them and had a lot to lose, but then said Norman hadn't even asked the CHS for their full name, ID or anything during the purchase.

53.     After dropping Hudson off at Residence #1, the CHS met with FBI Agents. The FBI seized the firearms and accessories purchased from Norman for Evidence. (See Exhibit A – Evidence Photos #4 - #10).

54.     On June 20, 2021, the CHS received a text message from Hudson using telephone number (336) 552-0529. The text message included a photo of two firearms displayed on the hood of a red vehicle. One firearm appeared to be a shotgun and the other a rifle with extended magazine. The text message stated: "Holler at me gonna sell my 1201 like my buddy had look at the diff tho mine is worth more" … "For u only u can get my shotgun for 800 that's 200 less than I want but if u know anybody else I need to sell it bc I gotta handle these petty warrants tomoorow6." (See Exhibit A – Text Message Photo #9).

55.     On June 21, 2021, NC-SBI, SIU, ASAC Marsh obtained a North Carolina State Court Orders authorizing the installation and monitoring of PRTT for cellular telephone numbers (336) 552-0526, used by Hudson and (336) 404-6565, used by Norman. The order was signed by Superior Court Judge S.L. Allen.

15

56.    On June 24, 2021, the CHS attempted to contact Hudson by telephone, text message and in person by going to Residence #1. However, the CHS was unsuccessful in contacting Hudson because according to his mother, whom the CHS spoke with in person at Residence #1, Hudson was asleep and had been so for approximately three days straight. The purpose of the CHS's attempted contact with Hudson was to purchase the shotgun and rifle he had offered to sell the CHS on June 20, 2021. Additionally, the CHS wanted Hudson to schedule the purchase of a new, decommissioned NCHP Sig Sauer P226 semi-automatic pistol with Norman. Norman showed this pistol to the CHS during the controlled firearms evidence purchase that occurred on June 8, 2021.

## The June 24, 2021 Controlled Buy

57.    On June 24, 2021, at approximately 2:35pm, the CHS initiated a consensually monitored and recorded call to Norman at telephone number (336) 404-6565. During the call, the CHS told Norman over the last few days he had tried to get in touch with Norman though Hudson, but Hudson had been "out of it partying." Norman replied: "Tommy's like that, you can talk to him, then he will disappear for a little while. I will talk to him every day, then I won't talk to him for a week or two, then I'll be like damn, what the hell did you do?" The CHS stated: "He's just partying on them drugs and shit, I've been trying to tell him to slow down." Norman stated: "Yep, learn the hard ways. He ought to know better."

58.    Norman agreed to sell the CHS the new, decommissioned NCHP Sig Sauer P226 semi-automatic pistol for $2,000.00. The CHS agreed to meet Norman in approximately thirty (30) minutes at the former Gunter's Citgo convenience store located at 5900 N. Church Street, Greensboro, NC. The store had been closed due to a fire.

16

59.     On June 24, 2021, the FBI conducted a successful controlled firearms evidence purchase from Norman utilizing the CHS. The purchase was consensually audio/video recorded by the CHS and physically surveilled by FBI, NC-SBI and BATFE ground Agents and NC-SBI Aircraft. The NC-SBI Aircraft video recorded the air surveillance activities.

60.     At approximately 3:13pm, Norman arrived at Gunter's Citgo in uniform, driving his marked NCHP Dodge Charger patrol vehicle. Vehicle number D252 was displayed on the driver's side rear window of Norman's patrol vehicle. After parking, Norman opened the trunk of the patrol vehicle. The CHS and Norman met near the trunk area, where Norman handed the CHS a black gun case that contained the new, decommissioned NCHP Sig Sauer P226 357 semi-automatic pistol. The CHS placed $2,000.00 in U.S. currency (FBI case funds) on top of a long gun case that was located inside the trunk of the patrol vehicle. Norman then took possession of the U.S. currency. (See Exhibit A – Video Screen Shot #6, #7, #8, #9 and Aerial Video Screen Shot #4).

61.     During the purchase Norman told the CHS: "It's the same one, it's got three magazines, it's got the badge on it." CHS stated: "I should have had you to get me some of them bullets." Norman stated: "My house ain't but right down the road, if you want some bullets."

62.     The CHS stated: "I didn't want Tommy to be pissed … but he been going hard." Norman stated: "I've been friends with Tommy for a while, I try to help him out, he goes up and down, I don't know if he gets depressed or what … I used to work with him back in the day, we would work ten to twelve hour days, he would work."

63.     Norman invited the CHS to follow him to a location at 7619 Strawberry Road, Summerfield, NC, to look at an enclosed trailer Norman had for sale. The CHS followed Norman to that location and Norman showed the CHS the trailer. While discussing the trailer, the

17

conversation turned back to Hudson. The CHS told Norman last week Hudson offered to sell the CHS every gun he had. Norman said Hudson "gets to where he need money sometimes." The CHS said Hudson showed them pictures where Hudson and Norman had attended Basic Law Enforcement Training together. Norman said: "We went to BLET, but he let it go … I told him don't let it go you might change your mind, he let it go, he let it run out … He's a good boy man, he's been through a lot. He's been through a lot, as far as his life … You know he tried to kill his self in jail … his sister wrecked a car, she was on pills and we charged her, I didn't, a Trooper in Rockingham, they charged her with DWI and she killed her little girl or little boy, well I think it was a nephew, Tommy's little nephew, *he was in prison so he couldn't even go to the funeral*, so that fucked him up … Last week he tried to sell me that twelve gauge back, he wanted that thirty aut six, I think he wanted me to give him like 900 bucks or 600 bucks, I'd rather have that thirty aut six, I've already got one of those twelve gauges" (emphasis added).

64.     The CHS left Norman and met with FBI Agents. The FBI seized the firearm purchased by the CHS from Norman for evidence. (See Exhibit A – Evidence Photos #11 - #16).

18

## Interstate Nexus

65.     BATFE SA Michael Newsome, a firearms nexus expert, examined the Sig Sauer P226 357 semi-automatic pistol bearing serial number 47A061969 that Norman transferred to Hudson on May 12, 2021. SA Newsome determined that the pistol is a firearm as defined by Title 18, United States Code, Section 921(a)(17)(A) and was not manufactured in the State of North Carolina. Therefore, he opined, the pistol must have been shipped or transported in interstate or foreign commerce prior to Hudson possessing it.

---

Case 1:21-cr-00373-CCE   Document 10   Filed 07/08/21   Page 20 of 42

## CONCLUSION

Based upon the foregoing, I respectfully submit that there is probable cause to believe that on or about May 12, 2021, in the County of Guilford, Timothy Jay NORMAN, did sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(d)(1).

Respectfully submitted,

/s/ Phillip W. Spainhour
SPECIAL AGENT PHILLIP W. SPAINHOUR
FEDERAL BUREAU OF INVESTIGATION

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina

07/01/21

20

## Exhibit A

- Text Message Photo #1



- Text Message Photo #2



Text Message Photo #3



- ## FB Screen Shots #1 & #2





- Text Message Photos #4 & #5





- Crime Scene Photos #1 - #7 – (633 Cedar Lane, Wentworth, NC)



- <u>Video Screen Shot #1 (May 12, 2021 @ Target Residence #2)</u>



- <u>Tommy Lee Hudson NC-DMV Photo</u>



- Text Message Photos #6, #7 & #8

 



- Evidence Photos #1, #2 & #3 (May 12, 2021 - purchased from Target Residence #3)



- <u>Video Screen Shot #2 (June 8, 2021 @ Target Residence #1)</u>



- Aerial Video Screen Shots #1 & #2 (June 8, 2021 @ Target Residence #3)





- Video Screen Shot #3 (June 8, 2021 @ Target Residence #3)



- Aerial Video Screen Shot #3 (June 8, 2021 @ Target Residence #3)



- <u>Video Screen Shot # 3 (June 8, 2021 @ Target Residence #3)</u>



- <u>Video Screen Shot #4 (June 8, 2021 @ Target Residence #3)</u>



- Video Screen Shot #5 (June 8, 2021 @ Target Residence #3)



- Trooper Timothy Norman NC-DMV Photo



- <u>Evidence Photos #4 - #10  (June 8, 2021 purchased from Target Residence #3)</u>







- <u>Text Message Photo #9</u>

**10:05**                                    .ıl 5G E 🔋





+1 (336) 552-0529 ›

He hard

He's out of florida

Today 5:15 AM



Holler at me gonna sell my 1201 like
my buddy had look at the diff tho
mine is worth more not even being
funny

Today 9:31 AM

Happy Father's Day

Thanks bro HAPPY FATHERS DAY
as well

For u only u can get my shotgun for
800 thats 200 less than I want but if
u know anybody else I need to sell it
bc I gotta handle these petty
warrants tomoorow6

    Text Message   ⬆

- <u>Video Screen Shot #6 & #7</u>

 



- Aerial Video Screen Shot #4



- Evidence Photos #11 - #16 (June 24, 2021 purchased from Norman @ Gunter's Citgo)









